UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARCH TRADING CORP., ARVIN PROPERTIES INC., HEZER HOLDINGS INC., MADEC LIMITED and OSIS INTERNATIONAL CORP.,<br><br>               Plaintiffs,<br><br>   v.<br><br>THE REPUBLIC OF ECUADOR, a sovereign nation, the FIDEICOMISO AGD-CFN NO MAS IMPUNIDAD, an agency or instrumentality of the REPUBLIC OF ECUADOR, and CORPORACIÓN FINANCIERA NACIONAL, an agency or instrumentality of the REPUBLIC OF ECUADOR,<br><br>               Defendants. | Civil Action No. 13 Civ. 4445 (PAC) |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS'
MOTION TO DISMISS**

# TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | THIS ACTION IS BARRED BY RES JUDICATA | 1 |
| II. | THIS ACTION IS BARRED BY THE ACT OF STATE DOCTRINE | 4 |
| III. | THIS ACTION IS BARRED BY THE STATUTE OF LIMITATIONS | 7 |
| IV. | PLAINTIFFS HAVE STATED NO CLAIM AGAINST CFN OR FIDEICOMISO | 11 |
| V. | THERE IS OTHERWISE NO JURISDICTION | 12 |

## I. THIS ACTION IS BARRED BY RES JUDICATA

Having litigated and lost in Florida, Plaintiffs are barred from seeking to establish jurisdiction under the FSIA, and from contesting the applicability of the Act of State ("AOS") doctrine. Plaintiffs do not contest, nor could they, that they were Intervenors in Florida, and that their Intervenors' Complaint challenged alleged seizures by AGD in 2008 that Plaintiffs again seek to challenge in this action, on the same grounds. Plaintiffs do not contest, nor could they, that the Florida court dismissed their Intervenors' Complaint with prejudice for lack of jurisdiction under the FSIA and under the AOS doctrine. Although they fail to acknowledge this fact, Plaintiffs also do not contest that they filed an appeal of the Florida dismissal and then abandoned it. Despite these facts, Plaintiffs contend that they may bring a new action in this Court asserting claims the Florida court dismissed with prejudice, two years after that dismissal.

Plaintiffs initially argue that the Florida court's ruling that there is no FSIA jurisdiction over their claims is not res judicata because it was not a ruling on the merits. As Defendants have demonstrated, a court's ruling on a jurisdictional issue is res judicata as to that issue (as opposed to the substantive merits of a claim). Mem. (D.E. 27) at 12, citing *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n. 9 (1982); *Ripperger v. A. C. Allyn & Co.*, 113 F.2d 332, 333 (2d Cir. 1940); *Barclay's Ice Cream Co. v. Local No. 757 of Ice Cream Drivers, et al.*, 1979 U.S. Dist. LEXIS 9964, *3 (S.D.N.Y. 1979). The FSIA applies equally in state and federal courts. 28 U.S.C. §1604. Plaintiffs are barred from litigating the FSIA issue a second time in this action.

*Otto's Heirs v. Kramer*, 797 So. 2d 594 (Fla. 3rd DCA 2001), has nothing to do with this res judicata issue. The question in *Otto's* was whether a Florida court's dismissal without prejudice on forum non conveniens grounds based on a forum selection clause, which left the parties to litigate in Switzerland, barred a second Florida action seeking discovery for purposes

of satisfying the Swiss judgment. Not surprisingly, it did not. *Id.* at 595-96. Likewise, S*ewell v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 94 F.3d 1514 (11th Cir. 1996), is not germane. Sewell submitted claims against his broker for arbitration. The broker filed a New York state court action challenging arbitrability, and the court permanently stayed the arbitration. *Id.* at 1516-17. Sewell sued on these same claims in Florida. The Eleventh Circuit held that where the New York court found only that the claims were not arbitrable, res judicata did not bar Sewell from pursuing his claims on the merits. *Id.* at 1518.

Plaintiffs argue that res judicata should not apply because as Intervenors they unsuccessfully sought to establish FSIA jurisdiction under 28 U.S.C. §§1605(a)(1) and 1607(b), whereas here they invoke another FSIA exception, §1605(a)(3). According to Plaintiffs, as Intervenors they could not have added CFN and Fideicomiso as parties, and without them as parties, Plaintiffs could not have relied on §1605(a)(3) to establish FSIA jurisdiction over Ecuador in the Florida Action. This argument fails on multiple levels. First, no one forced Plaintiffs to intervene in Florida. They made that tactical choice voluntarily. To the extent that the vehicle they chose to assert their expropriation claims against Ecuador limited their ability to add other parties (which it did not, *see* Mem. at 11 n. 7), any such limitation was self-imposed. Further, it is undisputed that, as Intervenors, Plaintiffs never sought to add CFN or Fideicomiso.

More importantly, the premise underlying Plaintiffs' §1605(a)(3) argument is flawed. Plaintiffs repeatedly assert that, because CFN and Fideicomiso were not parties in Florida, Plaintiffs could not have attempted to assert FSIA jurisdiction over *Ecuador* under the "second nexus clause" of §1605(a)(3). Opp. at 6-9. They cite no authority for this assertion, and it is not correct. There is nothing in the second nexus clause requiring that, for a plaintiff to assert jurisdiction over a foreign state based on conduct of an agency or instrumentality, the plaintiff

must name the agency or instrumentality as a party. Thus, as Intervenors asserting claims against Ecuador in Florida, Plaintiffs could have tried to establish FSIA jurisdiction under the second nexus clause based on CFN, Fideicomiso or any other Ecuadorian agency or instrumentality allegedly owning or operating the expropriated property and engaging in commercial activity in the U.S., even though none of them was a party to the action.

In seeking a second bite at the FSIA jurisdictional apple, Plaintiffs rely on *Mann v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, 488 F.2d 75 (5th Cir. 1973), and *Johnson v. Boyd-Richardson Co.*, 650 F.2d 147 (8th Cir. 1981). These cases are inapposite, as they involved orders granting leave to amend to cure jurisdictional defects (lack of diversity and misnomer of a defendant), and dismissals following failure to amend. That is a far cry from what happened in Florida, where the FSIA issue was litigated to conclusion, resulting in a dismissal with prejudice. *Rubaii v. Lakewood Pipe of Texas, Inc.*, 695 F.2d 541 (11th Cir. 1983), is likewise of no value to Plaintiffs. Rubaii brought contract claims in Florida state court that were dismissed for lack of personal jurisdiction. *Id.* at 542-43; *see Lakewood Pipe of Texas, Inc. v. Rubaii*, 379 So. 2d 475, 478 (Fla. 2d DCA 1979). Then he brought a federal action asserting both contract and tort claims. *Rubaii*, 695 F.2d at 541. The Eleventh Circuit stated: "It is well-settled that res judicata applies to jurisdictional questions." *Id.* at 543. It held that "previous Florida state court decisions preclude relitigation of the jurisdictional issue related to Rubaii's contract claims." *Id.* at 541; *see id.* at 543. The Court then assessed personal jurisdiction as to the tort claims, which had not previously been litigated. *Id.* at 543-44. *Rubaii* supports

*Defendants'* position. Plaintiffs are trying to relitigate claims that were dismissed in the Florida action, and are trying for a second time to establish jurisdiction under the FSIA.[1]

Finally, Plaintiffs argue that applying res judicata would work an injustice. They have it backwards. It would be unjust to permit Plaintiffs to attempt a "do-over" of the Florida litigation that led to the dismissal of Plaintiffs' expropriation claims with prejudice. Plaintiffs chose to intervene in Florida and had a full and fair opportunity to try to establish jurisdiction under the FSIA. They failed. Then they appealed. Then they dropped their appeal. Then they showed up in this Court over two years later with new lawyers, again trying to assert expropriation claims against the Ecuadorian government and again trying to predicate jurisdiction on the FSIA. The interests of justice require that this action be dismissed as to all Defendants under res judicata.[2]

## II. THIS ACTION IS BARRED BY THE ACT OF STATE DOCTRINE

The Second Circuit and other courts have held that the Second Hickenlooper Amendment ("SHA") only applies when either the allegedly expropriated property or its proceeds are located in the U.S. *Empresa Cubana Exportadora de Azucar y Sus Derivados v. Lamborn & Co., Inc.*, 652 F.2d 231, 237 (2d Cir. 1981); *Banco Nacional de Cuba v. First National City Bank*, 431 F.2d 394 (2d Cir. 1970), *rev'd on other grounds*, 406 U.S. 759 (1972); *Glen v. Club Méditerranée, S.A.*, 365 F. Supp. 2d 1263, 1268 (S.D. Fla. 2005), *aff'd* 450 F.3d 1251, 1257 (11th Cir. 2006); *Compania de Gas de Nuevo Laredo, S.A. v. Entex, Inc.*, 686 F.2d 322, 327 (5th Cir. 1982), *cert. denied* 460 U.S. 1041 (1983); *see* Restatement Third of the *Foreign Relations Law of the United States*, §444 cmt. e (1987); *see also Ethiopian Spice Extraction Share Co. v.*

---

[1] It makes no difference if Plaintiffs are now alleging that more companies were seized by AGD in 2008 than they alleged in their Intervenors' Complaint. *See* Opp. at 7. Plaintiffs could have included all such companies when they filed the Intervenors' Complaint in 2009. They do not contend otherwise.

[2] Plaintiffs cannot seriously dispute that CFN and Fideicomiso are in privity with Ecuador for res judicata purposes. Instead, they seek to evade the issue by rehashing their erroneous §1605(a)(3) argument. *See* Opp. at 7-8.

*Kalamazoo Spice Extraction Co.*, 543 F. Supp. 1224, 1231 (W.D. Mich. 1982), *rev'd on other grounds*, 729 F.2d 422 (6th Cir. 1984); *Hilsenrath v. Swiss Confederation*, 2007 U.S. Dist. LEXIS 81118, *18 (N.D. Cal. Oct. 23, 2007); *Perez v. Chase Manhattan Bank, N. A.*, 61 N.Y.2d 460, 471-72 (N.Y. 1984); *United Mexican States v. Ashley*, 556 S.W.2d 784, 786 (Tex. 1977). Plaintiffs do not plead or otherwise contend that the allegedly expropriated property is located in the U.S., or that any proceeds of the allegedly expropriated property have made their way to this country. For this reason, the Florida Court dismissed the Intervenors' Complaint with prejudice under the AOS doctrine.[3]

Recognizing that the law in this Circuit, starting with *Banco Nacional*, is squarely against them, Plaintiffs make a variety of attempts to avoid dismissal on AOS grounds. First, they contend that the Second Circuit's ruling in *Banco Nacional* that the SHA has a U.S. "situs" requirement is no longer good law. Plaintiffs are mistaken. In *Banco Nacional*, the Second Circuit extensively surveyed the legislative history of the SHA and stated that "[i]f one fact is clear from the legislative history, it is that this language was designed to be invoked by American firms in order to afford them 'a day in court' -- and presumably a monetary recovery -- when some other entity attempted to market the American firms' expropriated property and some aspect of such an attempted transaction took place in this country." 431 F.2d at 402. The Supreme Court reversed *Banco Nacional* on other grounds. *See* 406 U.S. 759 (1972). As Justice Brennan observed in his dissent when addressing the Second Circuit's opinion: "In arriving at this conclusion, the [Second Circuit] found inapplicable the Hickenlooper Amendment... I agree

---

[3] In asking this Court to disregard Second Circuit precedent, Plaintiffs rely on two D.C. Circuit cases: *Ramirez de Arellano v. Weinberger*, 745 F.2d 1500 (D.C. Cir. 1984), a divided decision that was vacated by the Supreme Court, 471 U.S. 1113 (1985), and thus has no precedential value, *see Rong v. Liaoning Provincial Gov't*, 362 F. Supp. 2d 83, 100 n. 13 (D.D.C. 2005); and *Agudas Chasidei Chabad v. Russian Federation*, 528 F.3d 934 (D.C. Cir. 2008), which gave the SHA issue only fleeting consideration. *Id.* at 953.

with my colleagues in leaving that determination undisturbed." *Id.* at 780 n. 5; *see Banco Nacional de Cuba v. Chase Manhattan Bank*, 658 F.2d 875, 882 n. 10 (2d Cir. 1981). Nine years after the Supreme Court reversed *Banco Nacional*, the Second Circuit reiterated in *Empresa* that "[t]he Hickenlooper Amendment…has been interpreted in this Circuit as applying only to cases in which the expropriated property has found its way back into the United States," citing *Banco Nacional*. 652 F.2d at 237. Courts in other jurisdictions have reached the same conclusion after the Supreme Court's opinion in *Banco Nacional*, relying on the Second Circuit's analysis in *Banco Nacional* in determining the SHA has a U.S. situs requirement. *See Compania*, 686 F.2d at 327; *Ethiopian Spice*, 543 F. Supp. at 1231.[4]

The legislative history supports the Second Circuit's conclusions in both *Banco Nacional* and *Empresa* that the SHA is limited to situations where the expropriated property or its proceeds are sited in the U.S. In asking this Court to depart from the law in this Circuit, Plaintiffs rely on one snippet of legislative history that they depict as supporting their interpretation. They are wrong. Plaintiffs quote a statement by Congressman Fraser, who was questioning whether his understanding that the SHA did not have a situs requirement was correct. Opp. at 20 n. 26. Congressman Fraser went on to ask the witness who was testifying if he would be willing to research the issue and submit a memo. Hearings on H.R. 7750 before the Committee on Foreign Affairs, 89th Cong., 1st Sess. 592, 1029-31 (1965). It is clear that the Congressman was unsure whether his reading was correct. And his comments fall within a wider range of pages of the Committee hearings (pp. 1025-31) that was among the legislative history

---

[4] To address another one of Plaintiffs' misguided suggestions, *see* Opp. at 20-21, *Empresa*, *Compania*, and *Ethiopian Spice* all post-dated the FSIA's enactment.

that the Second Circuit cited in *Banco Nacional* to support its holding that the SHA has a U.S. situs requirement. *See* 431 F.2d at 402.

Finally, again taking issue with controlling precedent in this Circuit, Plaintiffs argue that the Second Circuit's interpretation of the SHA is inconsistent with various provisions of the FSIA. This argument also is unavailing. The FSIA is a jurisdictional statute and the AOS doctrine is an affirmative defense. They serve different functions. Beyond that, contrary to Plaintiffs' suggestion, the SHA's U.S. situs requirement could be satisfied in a case in which jurisdiction is founded on the second nexus clause in §1605(a)(3), provided that the allegedly expropriated property or any property exchanged for that property was located in the U.S. Similarly, there is nothing in the FSIA's post-judgment attachment provisions that is inconsistent with the Second Circuit's interpretation of the SHA. Far from it. As Plaintiffs themselves note, 28 U.S.C. §1610 has its own U.S. situs requirement -- it only permits attachment of "property used for a commercial activity in the United States," under §1610(a)(3), or "any property in the United States," under §1610(b)(2).

## III.   THIS ACTION IS BARRED BY THE STATUTE OF LIMITATIONS

New York law determines the limitations period. Mem. at 31-32 (citing *Morris v. People's Republic of China*, 478 F. Supp. 2d 561, 571 (S.D.N.Y. 2007)). Under New York's borrowing statute, this Court must apply the shorter limitation period of either New York or of the situs of the alleged injury, Ecuador. *See* N.Y. C.P.L.R. §202. Plaintiffs do not dispute that the New York borrowing statute determines the limitations period; they argue instead that the applicable New York period is shorter than the applicable Ecuadorian period, and that because New York does not provide for a cause of action exactly like Plaintiffs' claims, the "catch-all" six-year limitations period under C.P.L.R. §213(1) applies. Plaintiffs' analysis is incorrect.

The shorter limitations period is the 90-day period under Ecuadorian law.[5] Although Plaintiffs argue that a 10-year limitations period under the Ecuadorian Civil Code ought to apply, Plaintiffs ignore that the seizures they complain of were administrative acts; as such, Ecuadorian administrative law principles apply. Under those principles, any action for compensation under the Ecuadorian Civil Code (where the 10-year limitations period is located) could not become available unless and until a claimant successfully challenged the administrative act itself. Such a challenge must be brought within 90 days. *See* Second Aguilar Decl. ¶¶ 3, 5.[6]

Even if the Ecuadorian limitations period is not the shortest applicable, Plaintiffs' action would still be time-barred under New York law, which provides for a three-year limitations period for conversion claims. C.P.L.R. §214. Plaintiffs are misguided in protesting application of the limitations period for the "most closely analogous" state law cause of action. *See* Opp. at 25. Locating the applicable cause of action by analogy is the ordinary and accepted mode of analysis. Indeed, in *Kupfer v. Federal Republic of Germany*, a case Plaintiffs are at pains to distinguish, this very Court considered the New York limitations period for a plaintiff's claims for "Unlawful Taking and/or Expropriation of Property" and "Taking of Property in Violation of Treaty/International Law Obligations." 2010 U.S. Dist. LEXIS 145454, 07 Civ. 8589, at *9 (S.D.N.Y. Mar. 29, 2010) (Crotty, J.). As this Court explained, "[w]here a federal action does not contain a statute of limitations, courts borrow the statute of limitations applicable to *the most closely analogous* cause of action under the law of the state in which the federal court sits." *Id.*

---

[5] Even if Plaintiffs were correct that Mandate 13 bars all seizure-related claims in Ecuador (and they are not, *see* Second Declaration of Juan Pablo Aguilar ("Second Aguilar Decl.") ¶¶6-8), that would not answer the question of which Ecuadorian limitations period applies to expropriation claims.

[6] Plaintiffs exaggerate Mandate 13. An aggrieved party could have challenged a seizure order in Ecuador on the grounds that the owners of the seized property had no connection to Filanbanco. *See* Second Aguilar Decl. ¶¶ 7-8. The period for presenting such a challenge was 60 days, which expired on September 26, 2008.

(emphasis added). And this Court applied New York's three-year limitations period to claims like those asserted here. *Id*.

*Kupfer* is not unusual. In *DelCostello v. Int'l Brotherhood of Teamsters*, a case Plaintiffs rely on, the Supreme Court stated that where a federal statute of limitations is absent in a federal suit, "our task is to 'borrow' the most suitable statute or other rule of timeliness from some other source. We have in general concluded that Congress intended that the courts apply *the most closely analogous* statute of limitations under state law." 462 U.S. 151, 158 (1983) (emphasis added); *see also Blue Ridge Invs., LLC v. Republic of Argentina*, 902 F. Supp. 2d 367, 386-87 (S.D.N.Y. 2012) ("Congress ordinarily intends by its silence that we borrow state law . . . The first step in identifying a possible statute of limitations is *identification of the proper state analog*. . .") (emphasis added) (citations omitted).

Plaintiffs rely on *Lord Day & Lord v. Socialist Republic of Vietnam*, 134 F. Supp. 2d 549 (S.D.N.Y. 2001), for the proposition that New York's "catch-all" six-year limitations period applies. In *Lord Day*, however, the question of the applicable limitations period was not litigated; the parties simply agreed to the six-year period, and the court did not conduct any analysis regarding which period applied. *See Lord Day*, 134 F. Supp. 2d at 562-63. *Lord Day* provides no reason for this Court to reach a different result than in *Kupfer*.

Plaintiffs' alternative argument that the most closely analogous cause of action is not a state conversion claim, but instead a federal Takings Clause claim, also fails. Plaintiffs cite authority for the proposition that conversion claims and Takings Clause claims are distinct and relate to different conduct. But that case law demonstrates that conversion is the most closely analogous claim, because Plaintiffs' causes of action sound in tort. Plaintiffs repeatedly state that "Defendants have taken [Plaintiffs'] Seized Assets without any legitimate, regulatory, law

enforcement or public interest purpose." Compl. ¶¶ 90, 100, 110, 120, 130. Dozens of paragraphs are devoted to further allegations that the Defendants' actions were illegal. *See, e.g.*, *id.* ¶¶ 44 (calling the Seizures "illegal"), 69 (noting that the seizures were "unlawful acts"). As demonstrated by the authority Plaintiffs cite, a Takings Clause claim is based on a *lawful* taking, in which the only question is appropriate compensation. *Compare Mac'Avoy v. Smithsonian Inst.*, 757 F. Supp. 60, 70 (D.D.C. 1991) ("A prerequisite to a claim under the Takings Clause is proof of the government's lawful authority to take the property") *with Hawkins v. Hall*, 453 Fed. Appx. 208, 201-11 (3d Cir. 2011) ("An unauthorized or unlawful taking is not compensable under the fifth amendment, but is a claim sounding in tort") (citation omitted). Because Plaintiffs have claimed that the alleged seizures were illegal, the Court should not borrow from the Takings Clause limitations period, because these are claims "sounding in tort." The tort is conversion. *See State v. Seventh Regiment Fund*, 774 N.E.2d 702, 712 (N.Y. 2002) (conversion is the "unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights") (citations omitted). Conversion claims carry a three-year limitations period.[7]

*DelCostello* does not permit Plaintiffs to escape the three-year limitations period. The Court there reiterated that in the ordinary course federal courts are to apply the most analogous state law limitations period when a federal limitations period is absent. 462 U.S. at 158-59. But in *DelCostello,* which involved an employee suit against an employer and a union concerning a collective bargaining agreement, the Court was concerned that applying the extraordinarily short

---

[7] Courts consistently look to the most applicable *state* law limitations period. Even if Plaintiffs were correct that the cause of action here is more akin to a "takings" claim than a tort claim, it is not clear why a *federal* takings claim would be the appropriate analogy. The most closely analogous state takings claim would be a claim brought under the New York Eminent Domain Procedures Law, which has a 30 day limitations period. *See* N.Y. EDPL §207(A). Plaintiffs' attempt to analogize their claims to taking claims is thus self-defeating. Regardless, the question is not which "takings" cause of action applies, because the claims sound in tort.

state limitations period could eviscerate an aggrieved employee's federal rights. 462 U.S. at 166. The Court reasoned that the unique circumstances of that suit made it fall outside the ambit of any applicable state limitations period. *Id.* at 165 (noting that the state law analogies there "suffer from flaws, not only of legal substance, but more important, of practical application in view of the policies of federal labor law and the practicalities of hybrid §301/fair representation litigation"). The concerns that animated the *DelCostello* decision are absent here, primarily because Plaintiffs had ample time to bring their claims in this Court within the applicable state law three-year limitations period, but failed to do so. Accordingly, this action is time-barred.

## IV. PLAINTIFFS HAVE STATED NO CLAIM AGAINST CFN OR FIDEICOMISO

Defendants have shown that Plaintiffs fail to state a claim against CFN or Fideicomiso because the alleged takings for which Plaintiffs seek damages were done by AGD, not CFN or Fideicomiso (which did not even exist at the time). Plaintiffs concede that "the original act of confiscation was formally engaged in by the AGD." Opp. at 29. They argue, however, that because the Complaint frequently pluralizes "Defendants," because each Plaintiff-specific count includes the allegation that at some unspecified time, in some unspecified way, the Defendants "worked in coordination with each other," and because no Defendant has paid the Plaintiffs anything for the property of which they allegedly have been deprived, they have stated takings claims against CFN and Fideicomiso. *Id.* Conspicuously, Plaintiffs cannot point to any specific *factual* allegation that would support a claim that CFN or Fideicomiso expropriated Plaintiffs' companies.

Plaintiffs rely on two Ninth Circuit cases arising from the Holocaust, holding that a foreign state that received taken property may be sued, even if that state did not participate in the taking. Opp. at 30-31, citing *Cassirer v. Kingdom of Spain*, 616 F.3d 1019 (9th Cir. 2010) and *Altmann v. Republic of Austria*, 317 F.3d 954 (9th Cir. 2002). These cases are distinguishable,

and should not be followed. First, the plaintiffs in these cases sought the return of their expropriated property, thus making it necessary to sue the state in possession of the property. *Cassirer*, 616 F.3d at 1022; *Altmann,* 317 F.3d at 958. Plaintiffs, in contrast, seek only damages. Compl. at 18-24. Second, in these two cases the expropriation and subsequent possession of the property involved different countries. *Cassirer*, 616 F.3d at 1023; *Altmann*, 317 F.3d at 958-61. This is not true here, as Plaintiffs are attempting to hold two agencies or instrumentalities of Ecuador liable for alleged acts committed by another agency of the same country.

## V.     THERE IS OTHERWISE NO JURISDICTION

The Complaint fails to allege any facts establishing a basis for subject matter or personal jurisdiction as to any of the Defendants under the expropriation exception in §1605(a)(3) or personal jurisdiction over CFN or Fideicomiso under constitutional standards. Plaintiffs effectively concede that the Complaint fails to achieve what they admit it must: "adduce a factual basis for the application of" §1605(a)(3). Opp. at 13. They do not contend that Plaintiffs' allegedly expropriated ownership interests in the 133 companies or any property exchanged for those interests is present in the United States; they thereby concede that the first nexus clause of §1605(a)(3) is inapplicable. Plaintiffs do not contest that Fideicomiso has no activities in the United States establishing subject matter jurisdiction over it (or over Ecuador) under §1605(a)(3)'s second nexus clause or under the Due Process Clause. Nor do Plaintiffs contend that CFN "owns" any of the allegedly expropriated companies, or that CFN employees' attendance at conferences in Miami or CFN's former maintenance of a bank account in New York are sufficient to establish jurisdiction under §1605(a)(3).[8]

---

[8] Plaintiffs also do not deny that they are all owned by members of the Ecuadorian Isaias family, or that they are anything other than facades for Ecuadorian interests.

No doubt recognizing that their Complaint fails to adduce any factual basis for the application of §1605(a)(3), Plaintiffs now hang their entire jurisdictional argument on the newly-minted testimony of a former CFN official, Francisco Rendón Pantaleón, purporting to establish "commercial activity in the United States" by CFN in relation to six entities: Ecuadorian insurance companies Seguros Sucre, S.A., and Rocafuerte Seguros, S.A.; two Ecuadorian television stations; a program supposedly to provide financing to expatriate Ecuadorians, "Banco del Migrante"; and the U.S. bank Pacific National Bank ("PNB"), which is owned by the Ecuadorian bank Banco del Pacifico S.A. ("BDP") and indirectly owned by CFN through its ownership of BDP. That testimony does nothing to rehabilitate the Complaint. Despite Mr. Rendón's claimed two years of insider involvement in CFN's activities and one year on the BDP board of directors, he makes no factual assertions establishing that CFN "operates" any of those six entities or that it is "engaged in commercial activity in the United States" through them.

Beyond the bare assertion that CFN is the trustee of Fideicomiso, which in turn is asserted to own Rocafuerte Seguros, Mr. Rendón makes no factual assertions of any involvement by CFN in the operations of that company. *See* Rendon Decl. ¶¶33-35. Nor could he, as Rocafuerte Seguros manages its own commercial dealings and day-to-day operations, and CFN is not involved in them. Second Declaration of Danilo Morales ("Second Morales Decl.") ¶4. Mr. Rendón's testimony regarding "Banco del Migrante" is equally deficient and, worse, misleading. Contrary to Mr. Rendón's testimony, while CFN did some initial work to launch an institution to provide financial products to expatriate Ecuadorians, that project never came to fruition. In short, there is no such thing as "Banco del Migrante," and never has been. CFN only makes loans to expatriate Ecuadorians upon their return to Ecuador, and it does not make those loans through Casa Ecuatoriana offices in the U.S. Second Morales Decl. ¶6-7.

Mr. Rendón's assertions as to Seguros Sucre and the television stations are unhelpful to Plaintiffs. While he makes scattershot assertions concerning the activities of *those entities* in the United States, his testimony is devoid of any facts about how *CFN* supposedly "affirmatively and actively oversees" their "operations and commercial dealings." His conclusory statements are insufficient to establish jurisdiction. *Freund v. Republic of France*, 592 F. Supp. 2d 540, 559-60, 561 (S.D.N.Y. 2008); *Fickling v. Commonwealth of Australia*, 775 F. Supp. 66, 72 (E.D.N.Y. 1991). Mr. Rendón's blanket insinuations are unfounded, as CFN is not involved in these entities' operations. Second Morales Decl. ¶¶3, 5. Finally, neither Mr. Rendón's factually-void statements concerning Seguros Sucre and the television stations, nor his testimony that CFN's then-President made a trip to Miami to meet with the U.S. Government-appointed trustee of PNB, provide any basis to disregard the clear precedent that agencies and instrumentalities of foreign states are to be treated as separate from their subsidiaries absent evidence that a subsidiary "is so extensively controlled by its owner that a relationship of principal and agent is created." *Gabay v. Mostazafan Found. of Iran*, 968 F. Supp. 895, 898-900 (S.D.N.Y. 1997) (citing *First National City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) ("*Bancec*"); *Freund*, 592 F. Supp. 2d at 557-59 (citing *Bancec* and *Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003)). There is no such evidence here, and accordingly no subject matter jurisdiction as to CFN or Fideicomiso, or as to Ecuador.

Plaintiffs cannot avoid their burden to establish *in personam* jurisdiction over CFN and Fideicomiso. First, Plaintiffs' reading of *Frontera Resources Azerbaijan Corp. v. State Oil Co. of the Azerbaijan Republic*, 582 F.3d 393, 398-401 (2d Cir. 2009), is wrong. An accurate reading of *Frontera* shows that, although the Second Circuit ruled that a foreign state *itself* could no longer avail itself of the safeguards of the Due Process Clause, that ruling did not answer the

question whether an *agency or instrumentality* of the foreign state enjoys those rights. The answer turns on whether, under the principles established in *Bancec*, 462 U.S. 611, the agency or instrumentality is so extensively controlled by the foreign state that a relationship of principal and agent exists between them, such that the agency or instrumentality should be treated as the foreign state itself and, therefore, ineligible for Due Process safeguards. *Frontera*, 582 F.3d at 398-401.[9] The Second Circuit left intact the application of the Due Process Clause to agencies and instrumentalities of a foreign state. Contrary to Plaintiffs' mischaracterization of *Frontera*, the extension of those protections to CFN and Fideicomiso remains the law.

Plaintiffs also argue that, because they allegedly have satisfied the "commercial activity" requirement of §1605(a)(3)'s second nexus clause, there is nothing more they need do to demonstrate that CFN and Fideicomiso have "minimum contacts." Plaintiffs are wrong under *Shapiro v. Republic of Bolivia*, in which the Second Circuit independently considered whether the defendants' contacts with New York were constitutionally sufficient to support personal jurisdiction. 930 F.2d 1013, 1020 (2d Cir. 1991). More significantly, Plaintiffs have failed to establish any facts that would support jurisdiction over CFN or Fideicomiso under *either* §1605(a)(3) or the Due Process Clause: they concede that Fideicomiso itself has no activities in the United States; they have failed to come forward with any specific factual allegations providing a basis to ignore the separate legal status of CFN and any of the six entities mentioned by Mr. Rendón; and the sporadic contacts that CFN has had with the United States are insufficient to create personal jurisdiction over it.

---

[9] *See* Declaration of Roberto Murillo Cavagnaro ¶¶4, 7, testifying to the autonomy of CFN's operations.

Respectfully submitted,

Republic of Ecuador, Fideicomiso AGD-CFN No Mas Impunidad, and Corporación Financiera Nacional

By Their Counsel,

/s/   Andrew Z. Schwartz

Andrew Z. Schwartz, Esq. (AS2166)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, Massachusetts  02210-2600
Tel: (617) 832-1000
Email: aschwartz@foleyhoag.com

Dated:   December 10, 2014

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Reply Memorandum in Further Support of Motion to Dismiss of Defendants the Republic of Ecuador, Fideicomiso AGD-CFN No Mas Impunidad, and Corporación Financiera Nacional and the accompanying Second Declaration of Juan Pablo Aguilar, Second Declaration of Danilo Morales, and Declaration of Roberto Murillo Cavagnaro were served electronically on all counsel of record by the Court's ECF system.

Dated: December 10, 2014

/s/ Andrew Z. Schwartz
Andrew Z. Schwartz