UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

ARCH TRADING CORP., ARVIN
PROPERTIES INC., HEZER HOLDINGS
INC., MADEC LIMITED *and* OSIS
INTERNATIONAL CORP,

               *Plaintiffs*,

   -*against*-

THE REPUBLIC OF ECUADOR, *a sovereign nation*; the FIDEICOMISO AGD-CFN NO MAS IMPUNIDAD, *an agency or instrumentality of* THE REPUBLIC OF ECUADOR; *and* CORPORACIÓN FINANCIERA NACIONAL, *an agency or instrumentality of* THE REPUBLIC OF ECUADOR,

               *Defendants*.

------------------------------------------------------------X

13 cv 4445 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

    Arch Trading Corp., Arvin Properties Inc., Hezer Holdings Inc., Madec Limited, and Osis International Corp. (collectively, "Plaintiffs") bring this action against the Republic of Ecuador ("Ecuador"), the Fideicomiso AGD-CFN No Mas Impunidad ("Fideicomiso"), and Corporación Financiera Nacional ("CFN") (collectively, "Defendants") seeking damages arising from Defendants' expropriation of Plaintiffs' property located in Ecuador, allegedly in violation of international law. All acts of expropriation took place in Ecuador; no acts of expropriation occurred here in the United States. Defendants argue they are immune from suit under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1604, and move to dismiss the action. For the reasons below, the Court GRANTS Defendants' motion to dismiss.

1

## BACKGROUND

Plaintiffs are companies that are owned by Ecuadorian citizens and incorporated in the British Virgin Islands. Collectively, Plaintiffs own 133 subsidiaries—each located in Ecuador—which were expropriated.[1] Compl. ¶¶ 16–17. Plaintiffs allege that on July 8, 2008, Ecuador's AGD[2] seized their Ecuadorian-based subsidiaries without providing compensation. *Id.* at ¶ 68. Moreover, Plaintiffs allege that Ecuadorian courts were ousted of jurisdiction to hear challenges.[3] *Id.* at ¶ 74. As a result of the seizures, Plaintiffs allege their subsidiaries are now under the control of the Ecuadorian Government in the Fideicomiso trust,[4] and are operated by the trust's sole trustee, CFN.[5]

On June 26, 2013, Plaintiffs initiated this action against Fideicomiso, CFN, and the Republic of Ecuador, alleging violations of the American Convention of Human Rights, customary international law, and the international law of diplomatic protection. *Id.* at ¶¶ 82–84. On September 5, 2014, Defendants moved to dismiss on the following grounds: (1) lack of

---

[1] Plaintiff Arch Trading Corp. owns 41 subsidiaries located in Ecuador; Plaintiff Arvin Properties Inc. owns 53 subsidiaries located in Ecuador; Plaintiff Hezer Holdings Inc. owns 19 subsidiaries located in Ecuador; Plaintiff Madec Limited owns 8 subsidiaries located in Ecuador; and Plaintiff Osis International Corp. owns 12 subsidiaries located in Ecuador. Compl., Ex. A.

[2] The AGD is Ecuador's equivalent to the United States Federal Deposit Insurance Corporation. On January 1, 2010, the rights and obligations of AGD were transferred by executive decree to the UGEDEP, an administrative agency within Ecuador's Ministry of Finance. *Id.* at ¶¶ 28–29.

[3] On July 9, 2008, Ecuador's Constituent Assembly—which had "plenary authority to decide any matter related to the Ecuadorian state and its institutions," *id.* at ¶ 57—issued "Mandate 13," allegedly ousting the Ecuadorian courts of jurisdiction to hear challenges to Defendants' seizures. *Id.* at ¶ 74.

[4] Fideicomiso is a trust, established on March 19, 2009 to hold assets "that the Government of Ecuador expropriates from the private sector." *Id.* at ¶ 28. The trust's sole beneficiary is the UGEDEP (formerly, the AGD).

[5] CFN is responsible for promoting "investments and the economic and social development of the country of Ecuador." *Id.* at ¶ 36.

2

subject-matter jurisdiction; (2) lack of personal jurisdiction; (3) improper venue; (4) *res judicata*; (5) statute of limitations; (6) the Act of State doctrine; and (7) failure to state a claim upon which relief can be granted.

## DISCUSSION

Defendants raise three jurisdiction-based defenses: lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1); lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2); and improper venue under Fed. R. Civ. P. 12(b)(3). Defendants also have merits-based defenses under Fed. R. Civ. P. 12(b)(6). Since jurisdiction-based defenses are threshold issues, however, they "should be addressed in the first instance by the District Court." *Cent. States Se. & Sw. Areas Health and Welfare Fund v. Merck–Medco Managed Care*, 433 F.3d 181, 203 (2d Cir. 2005).

### I. Plaintiffs Lack Subject-Matter Jurisdiction

#### A. Legal Standard

Generally, foreign governments and their agencies and instrumentalities are entitled to sovereign immunity under FSIA, unless an exception applies. In determining whether an exception applies, the Court should be most hesitant to find jurisdiction where the foreign entities have no connection with the United States. Recently confronted with a similar issue, the United States Court of Appeals for the Eleventh Circuit noted the "trend in recent Supreme Court cases" as signaling "the Supreme Court's reluctance to allow international law claims based on occurrences between foreign citizens on foreign soil to proceed in U.S. courts." *Mezerhane v. Republica Bolivariana de Venezuela*, —— F.3d ——, ——, No. 13–14953, 2015 WL 2117109, at *4 (11th Cir. May 7, 2015); *accord Sosa v. Alvarez-Machain*, 542 U.S. 692, 727 (2004) ("It is

3

one thing for American courts to enforce constitutional limits on our own State and Federal Governments' power, but quite another to consider suits under rules that would go so far as to claim a limit on the power of foreign governments over their own citizens, and to hold that a foreign government or its agent has transgressed those limits."); *see also Kiobel v. Royal Dutch Petroleum Co.*, –– U.S. ––, 133 S. Ct. 1659 (2013). In other words, what happens in Ecuador should stay in Ecuador.

Ecuador, CFN, and Fideicomiso are each classified as a "foreign state" under FSIA § 1603(a) and are immune from jurisdiction, except as otherwise provided. *See* FSIA § 1603(a) (including "agenc[ies] or instrumentalit[ies]" within the definition of a "foreign state"). Accordingly, subject-matter jurisdiction is governed by 28 U.S.C. § 1330(a), which confers jurisdiction "whenever a foreign state is not entitled to immunity either under the substantive provisions of FSIA §§ 1605–1607, or under any applicable international agreement." *Cargill Intern. S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir. 1993); *accord Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989) ("[T]he FSIA provides the sole basis for obtaining jurisdiction over a foreign state in federal court").

Questions of FSIA subject-matter jurisdiction are resolved through a three-part burden shifting framework. *Virtual Countries, Inc. v. Republic of South Africa*, 300 F.3d 230, 242 (2d Cir. 2002). First, the defendant must make a *prima facie* showing that it is a foreign state, thereby becoming "presumptively immune from the jurisdiction of United States courts; unless a specified exception applies." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). Next, the plaintiff must "sufficiently alleg[e] or proffer[] evidence" of a FSIA exception. *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 141 (2d Cir. 2001); *accord City of New York v. Permanent Mission of India to the United Nations*, 446 F.3d 365, 369 (2d Cir. 2006) ("The party seeking to

4

establish jurisdiction bears the burden of producing evidence establishing that a specific exception to immunity applies."). Finally, if the plaintiff satisfies its burden of production, the defendant bears "[t]he ultimate burden of persuasion by a preponderance of the evidence" that the FSIA exception does not apply. *Virtual Countries*, 300 F.3d at 242.

In applying this burden-shifting framework, courts "may look beyond the pleadings, to the evidence properly before it, and assess the substance of the allegations 'to determine whether one of the exceptions to the FSIA's general exclusion of jurisdiction over foreign sovereigns applies.'" *Mortimer Off Shore Servs., Ltd. v. Fed. Republic of Germany*, 615 F.3d 97, 105 (2d Cir. 2010) (quoting *Robinson*, 269 F.3d at 140) (justifying this heightened evidentiary standard because foreign sovereigns are immune from suit, not just from liability).

### B. Analysis

Since the parties agree that Defendants are foreign sovereigns, Plaintiffs must sufficiently allege facts or proffer evidence of a FSIA exception. Here, Plaintiffs rely on the "takings" exception, FSIA § 1605(a)(3), which withdraws sovereign immunity and confers subject-matter jurisdiction where "rights in property taken in violation of international law are in issue" and where the taking satisfies one of the following two nexuses with the United States:

> [1] that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or [2] that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States.

*Id.* Plaintiffs, however, fail to demonstrate their property was "taken in violation of international law." And even if Plaintiffs' property was "taken in violation of international law," Plaintiffs fail to establish a nexus with the United States.

Plaintiffs argue that, as a result of the July 8, 2008 seizures, their property was "taken in violation of international law" under FSIA § 1605(a)(3). *See Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 251 (2d Cir. 2000) ("[T]he phrase 'taken in violation of international law' refers to the nationalization or expropriation of property without payment of the prompt adequate and effective compensation required by international law, including takings which are arbitrary or discriminatory in nature"). Plaintiffs' argument fails for three reasons.

First, Plaintiffs' property was physically located in Ecuador and was expropriated by the AGD, an Ecuadorian entity. Such a domestic taking is a "single-nation problem," *Mezerhane*, 2015 WL 2117109, at *5; it does not violate international law and it does not concern United States courts. *See Smith Rocke v. Republica Bolivariana de Venezuela*, No. 12 Civ. 7316 (LGS), 2014 WL 288705, at *7 (S.D.N.Y. Jan. 27, 2014) ("A violation of international law first requires that the state take the property of a national of *another* state"). Next, Plaintiffs' attempt at implicating international law by relying on its incorporation in the British Virgin Islands does not change the outcome because Plaintiffs are owned by the Isaías, an Ecuadorian family. *See* French Decl., Ex. I 4:18–23 ("[Plaintiffs are] international holding companies, that are based [] in the British Virgin Islands . . . . [and] owned by the Isaias family"). Finally, since the AGD is an instrumentality of the Ecuadorian Government, it is presumed to be distinct and separate from the sovereign nation of Ecuador, unless Plaintiffs prove that Ecuador exercised day-to-day control over it. *See First National City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 626 (1983) ("*Bancec*") (holding that agencies and instrumentalities of foreign governments are entitled to a presumption of separateness from the foreign state).[6] Since

---

[6] Though Plaintiffs bear the burden of production under FSIA—with Defendants bearing the burden of persuasion—the *Bancec* presumption shifts the burden of persuasion to Plaintiffs to prove the AGD is not separate from the sovereign nation of Ecuador.

6

Plaintiffs make no such showing, the "taking" can be solely attributed to the AGD and not to Ecuador. Therefore, under each analysis, Plaintiffs fail to provide evidence showing this is anything more than an Ecuadorian dispute. Accordingly, Plaintiffs fail to demonstrate their property was "taken in violation of international law" under FSIA § 1605(a)(3).

Even if Plaintiffs' property was "taken in violation of international law," Plaintiffs cannot demonstrate a sufficient nexus with the United States under FSIA § 1605(a)(3). Plaintiffs argue the taking satisfies FSIA § 1605(a)(3)'s second nexus requirement because CFN and Fideicomiso currently "own[] or operate[]" the seized property and because CFN and Fideicomiso are "engaged in a commercial activity in the United States" through their subsidiaries.[7] But agencies and instrumentalities of foreign states are presumed to be separate from their subsidiaries. *Gabay v. Mostazafan Foundation of Iran*, 968 F. Supp. 895, 898–899 (S.D.N.Y. 1997) (applying the *Bancec* presumption of separateness to agencies and instrumentalities of a foreign state and their subsidiaries). Therefore, before the Court can assess whether CFN and Fideicomiso's subsidiaries have a sufficient commercial nexus to the United States, Plaintiffs must again rebut the *Bancec* presumption by proving that CFN and Fideicomiso exercise day-to-day control over their subsidiaries. Plaintiffs make no such showing. Instead, Plaintiffs merely outline examples of commercial activities that CFN and Fideicomiso's subsidiaries allegedly engage in and make conclusory allegations that the subsidiaries are controlled by CFN and Fideicomiso. Since Plaintiffs fail to adduce evidence that CFN and Fideicomiso exercise the requisite level of control over their subsidiaries, they fail to rebut the

---

[7] Specifically, Plaintiffs rely on the following subsidiaries: Pacific National Bank, a bank located in Florida; Seguros Sucre and Rocafuerte Seguros, insurance companies that transact with American insurers; TC Television and Gama Television, Ecuadorian channels that sell Ecuadorian programs to American channels; and Banco del Migrante, a bank that offers financial services to Ecuadorian citizens in the United States. Pantaleón Decl. ¶¶ 21–47.

7

*Bancec* presumption.[8] CFN and Fideicomiso's subsidiaries are, therefore, independent entities and Plaintiffs cannot rely on their activities in the United States to establish a nexus under FSIA's takings exception.[9]

Accordingly, since Plaintiffs fail to demonstrate an exception to sovereign immunity under FSIA, the Court lacks subject-matter jurisdiction over the suit. Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(1) is, therefore, GRANTED.

## II. Even if the Court has Subject-Matter Jurisdiction, Venue in this District is Improper

Even if Plaintiffs were to establish subject-matter jurisdiction under FSIA, venue would be improper is proper in this District. Under FSIA § 1603(a)(c), venue is proper "in any judicial district in which the agency or instrumentality is licensed to do business or is doing business, if the action is brought against an agency or instrumentality of a foreign state." Plaintiffs do not show, however, that CFN and Fideicomiso are "licensed to do business or [are] doing business" in this District under FSIA § 1603(a)(c).[10] Moreover, Plaintiffs fail to demonstrate why venue is proper in this District for Ecuador. *See* FSIA § 1603(a)(d) (providing that venue is proper "in the

---

[8] Since Plaintiffs fail to allege "specific facts" providing a "reasonable basis for assuming jurisdiction," *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 486 (2d Cir. 2007) (internal quotation marks omitted), Plaintiffs' request for jurisdictional discovery is DENIED.

[9] Even if Plaintiffs could rely on CFN and Fideicomiso's subsidiaries, their subsidiaries' commercial connections to the United States are insufficient to satisfy FSIA § 1605(a)(3). *See, e.g.*, Morales Decl. ¶ 7 ("CFN does provide loans to [Ecuadoran] citizens who have been living abroad, but it does so only upon their return to Ecuador. It is untrue that CFN 'distrubte[s loans] through [*Casa Ecuatoriana*'s] offices in the United States'"). Plaintiffs can do little to change the end result: this is an Ecuadoran dispute with no true connection with the United States.

[10] If Plaintiffs sought to satisfy FSIA § 1603(a)(c)'s "doing business" standard by relying on CFN and Fideicomiso's subsidiaries' activities in this District, the *Bancec* presumption of separateness would apply. And even if Plaintiffs rebutted the *Bancec* presumption, the subsidiaries at issue here fail to demonstrate a sufficient connection to this District under FSIA § 1603(a)(c).

8

United States District Court for the District of Columbia if the action is brought against a foreign state or political subdivision thereof").

Accordingly, even if the Court had subject-matter jurisdiction under FSIA's takings exception, venue would be improper in this District under FSIA § 1603(a)(c) and Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(3) would be GRANTED.

## CONCLUSION

For the reasons above, the Court lacks subject-matter jurisdiction and GRANTS Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(1), with prejudice. In the alternative, venue is improper in this District and the Court GRANTS Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(3), with prejudice.[11] The Clerk of the Court is directed to enter judgment and close the case.

Dated: New York, New York
       May, 28 2015

SO ORDERED

*Paul Crotty*

PAUL A. CROTTY
United States District Judge

---

[11] Because the Court dismisses Plaintiffs' suit on jurisdictional grounds, the Court does not reach Defendants' merits-based arguments.